IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

KALAH DEEL                                                                                   PLAINTIFF

v.                                    CASE NO.        13-2017

CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                                            DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I. Procedural Background:

The plaintiff filed an applications for DIB and SSI on February 25, 2010, alleging an onset date of January 31, 2007, due to plaintiff's psoriatic arthritis, fibromyalgia, and depression. Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on July 21, 2011. Plaintiff was present and represented by counsel.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

At the time of the administrative hearing, plaintiff was 51 years of age and possessed a High School Education plus 1 year of college. The Plaintiff had past relevant work ("PRW") experience as a Home Health Care worker, Director of Assisted Living and Executive Director of Assisted Living. (T. 135).

On October 4, 2011, the Administrative Law Judge ("ALJ") concluded that the Plaintiff became disabled on June 1, 2010 (T. 12) but prior to that date, although severe, plaintiff's psoriatic arthritis, fibromyalgia, carpal tunnel syndrom and depression did not meet or equal any Appendix 1 listing. T. 14-15. The ALJ found that, prior to June 1, 2010, the plaintiff maintained the residual functional capacity ("RFC") to perform a full range of sedentary work T. 15. With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the requirements of representative occupation such as  . T. . .

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the

evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

The court has reviewed the Briefs filed by the Parties, the Transcript of the proceedings before the Commission, including a review of the hearing before the ALJ, the medical records, and relevant administrative records and finds the ALJ's decision is not supported by substantial evidence.

Of particular concern is the ALJ determination that the Plaintiff had the Residual

Functional Capacity (RFC) to perform sedentary work during the period in question.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record.  *Id*.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing  *Lauer v. Apfel*, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

A Mental Diagnostic Evaluation was performed by Dr. Kathleen Kralik on June 28, 2010

(T. 342) who diagnosed the Plaintiff with Pain Disorder Associated with Both Psychological Factors and a General Medical Condition, Substance Abuse Disorder, and Personality Disorder. (T. 348-349). Dr. Kralik felt that her mental condition would have only mild to moderate effect on her Adaptive Functioning. (T. 348). A Psychiatric Review Technique was performed by Kevin Santulli, Ph.D. in July 2010 who diagnosed the Plaintiff with Depression (T. 360), Pain disorder associated with both psychological factors and general medical condition (T. 363), personality disorder, and substance abuse. (T. 365). Dr. Santulli also felt that her condition would only have Mild to Moderate effect upon her Functional Limitation. (T. 367). Dr. Santulli also provided a Physical RFC assessment stating that her limitations were only Mild to Moderate. (T. 373).

The court has stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. *See, e.g., Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement). This is especially true when the consultative physician is the only examining doctor to contradict the treating physician. *Cox v. Barnhart* 345 F.3d 606, 610 (C.A.8 (Ark.),2003).

The Plaintiff was treated by Dr. Ted Krell, from March 2006 until February 2010. (T. 315- 328).  Generally, an ALJ is obliged to give controlling weight to a treating physician's medical opinions that are supported by the record. *See Randolph v. Barnhart*, 386 F.3d 835, 839 (8th Cir.2004); 20 C.F.R. § 404.1527(d)(2). Dr. Krell is a board certified psychiatrist. Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v.*

*Barnhart* 393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. § 404.1527

  Dr. Krell provided a Mental Residual Function Capacity Questionnaire in October 2010 which provided that the Plaintiff was "seriously limited" in a number of areas and "unable to meet competitive standards" in others.  (T. 397-398).  Dr. Krell's opinion does not specifically address the period between 2007 and 2010.

  The ALJ discounted the opinion of Dr. Krell because one of his clinical notes in February 2007 showed she was "asymptomatic on Klonopin and Cymbalta". (T. 326). He found that the Doctor's records "consistently report improvement with the medications. (Ex. 5F).  (T. 19).  This conclusion is not supported by the record.  The Progress Note for February 11, 2010 stated:

> Lot has happened since I saw her last. Dr. Appleyard had increased Lyrica. Apparently, she had had some personality changes and had become somewhat aggressive and more irritable. Lyrica has been stopped. She is at this time moderately depressed. She is very angry with her husband. She is not sleeping well. She is not eating well. She is not suicidal. She is sad all of her waking hours. She is very irritable and having crying spells. She reports increased pain from her fibromyalgia since she stopped Lyrica. At this time, we talked about her perhaps stopping Crestor and/or Lopid because of their effect on mood. She surly will discuss that with Dr. Ali. I have given her option of either increasing Cymbaita or moving to Pristiq. She would like to increase Cymbaita. I am giving her samples of 30 mg tablets. I have listed all of her current medications. I will see her in followup in two weeks.

  There were some Progress Notes that reflected that she was "doing well" (T. 317), showed "improvement" (T. 318), and had "better spirits". (T. 319). Other Progress Notes, however,  indicated that she was "not feeling as well as she was" (T. 320), she was "unable to tolerate 120mg of Cymbalta" because of "nausea, vomiting, and diarrhea" (T. 321), her mood was "not normal" (T. 322), and that she "was sad most of her waking hours". (T. 323).   During

this time period the Plaintiff was treated by Dr. Krell she was on many prescribed medications which were either altered or replaced by her treating physicians in an attempt to control her physical and mental symptoms.

Under the Social Security regulations, the amount of weight given to a non-controlling medical opinion is determined by applying the following factors: (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion." 20 C.F.R. §§ 404.1527(d), 416.927(d); *See Owen v. Astrue* 551 F.3d 792, 800 (C.A.8 (Iowa),2008) *citing Wagner*, 499 F.3d at 848.

In this particular case all of the above factors are in the treating psychiatrist favor. The ALJ, notably, did not discuss the Mental RFC questionnaire (T. 395) of Dr. Krell which was rendered October 6, 2010. The ALJ gave great weight to the opinion of psychologist Kathleen Kralik who felt that the "claimant had a closet drinking problem, which she failed to report to her treating physician." (T. 20). The ALJ assumes that the drinking problem is unknown to the Plaintiff's treating psychiatrist and that it would have an adverse effect upon his RFC questionnaire. "An ALJ should recontact a treating or consulting physician if a critical issue is undeveloped". *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir.2005). *Johnson v. Astrue*, 627 F.3d 316, 319–20 (8th Cir.2010). If the ALJ is going to discount the opinion of the treating psychiatrist the court believes remand is necessary to allow the ALJ to submit interrogatories to

the Plaintiff's treating psychiatrist to determine if her binge drinking during his treatment time would effect his RFC determination.  He should be supplied a copy of Dr. Kralik's report as well as the Affidavit submitted by the Plaintiff contending that Dr. Kralik's report did not accurately reflect what she told Dr. Kralik.

## IV.  Conclusion:

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated  this November 21, 2013.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE